## No. _____

### First Circuit Appeal.

## PETER TIBBS ET AL. v. FELIX SCHEXNAYDER ET AL.

(December 30, 1924. Opinion and Decree.)
(February 18, 1925, Rehearing Refused)

---

*(Syllabus by the Editor.)*

1. Louisiana Digest, Executors and Administrators—Par. 199, 201, 202.
A public sale made of succession property in order to satisfy a judgment of record is valid, there being no evidence to show fraud. This is especially so where the purchaser gives the heirs six months in which to redeem it.

Appeal from the Parish of Iberia. Hon. James Simon, Judge.

This is a suit to recover land and improvements, etc.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Charles J. Mundy, of Thibodaux, attorney for plaintiff, appellant.

E. Veulemot and Porteous .R. Burke, of New Iberia, attorneys for defendant, appellee.

MOUTON, J. Pelagee Randolp, wife of Samuel Tibbs, died in Iberia Parish, leaving a small estate and three children, viz:

Peter, Columbus and Mary Jane Tibbs, issue of her marriage with Samuel Tibbs.

Felix Schexnayder alleged that the estate was in debt, and that none of the heirs would open the succession or pay its debts, applied for the administration. He was appointed administrator by the court, and the property of the estate was ordered to be sold for cash to pay the debts. As it was shown by proper affidavit that the value of the property of the succession was much under $500.00, the proceedings for the sale were conducted in compliance with the provisions of Act 153, 1900; and Act 70 of 1906.

The heirs bring this suit for the ownership of a two arpents lot of ground situated in Jenerette, which according to the sale of the estate, appears in the name of L. A Moresi, one of the defendants, against whom also and the administrator, plaintiffs ask for judgment for the value of a house removed from the land, for rents and revenues, and for some lumber alleged to have been illegally sold to Moresi by the administrator. Plaintiffs charge the administrator with having obtained the order of sale by false and fraudulent representations. The property was bought by Pelagee Tibbs in 1885, during the existence of her marriage with Samuel Tibbs, and was therefore a community asset. The record shows that at the time the sale was ordered that a judgment for the sum of $37.25 stood of record in Iberia parish, against Pelagee Tibbs. At that time, and for many years before, Pelagee and Samuel Tibbs, her husband, were living apart. Tibbs in New Orleans, Pelagee in Jenerette. Such a judgment could well have been obtained against her for the necessaries of life, and nothing appears that could be suggestive of its invalidity or nullity. As the value of the estate as appears from the preliminary proceedings, amounted to ninety dollars, the sale to pay the judgment, and necessarily also the cost of court that would accrue in the administration of the estate, was permissible. Under this state of facts there is nothing which would justify the inference that the order for the sale was obtained through improper, dishonest or illegal means. It is also charged by plaintiff that the sale was not held according to the advertisement, but that the property was acquired at private sale by L. A. Moresi. The proof shows that the heirs knew that the sale was to be made, and that, through Peter Tibbs, had employed Mr. Gordon Sandoz, an attorney, now dead, to represent them in the probate proceedings. Before the date fixed for the sale, Peter Tibbs says he had a talk with Attorney Porteus Burke in New Iberia. He says, Mr. Burke said, you are the man Mr. Sandoz rang me up about, this morning, telling me to buy the "property in for you." This conversation, unquestionably, shows that Peter, who represented the other heirs, knew the sale would take place, and was himself a prospective purchaser. It may be proper to notice here that if this sale had been obtained by fraudulent representations, Peter, would not have given his approval to the proceedings which led up to the sale, by appearing himself as a prospective bidder. The property was advertised to be sold on the 25th of September, 1915. On that date, as appears by a deed signed by Schexnayder, administrator, this land with some old buildings and fences was adjudicated to L. A. Moresi for $80.00. L. O. Hacker, an attorney, now deceased, was the attorney who conducted the mortuary proceedings for the administrator. In the record there is a letter from him addressed to Peter Tibbs, stating that his bid for the land of the estate for $80.00, had been accepted, and unless he came at once to pass the sale, the property would be re-advertised. This letter is dated Oct. 9th, 1915, and is therefore subsequent to the date the sale was to be held. The proof shows that Moresi was not at the sale Sept. 25th, 1915, the date it bears under the deed of the administrator.

It is fully shown that Moresi consented to buy the property only after having been earnestly requested to do so by Peter Tibbs. He had no desire to acquire it, and took title thereto to help Tibbs out of an embarrassing situation. From the facts so disclosed in the record it is impossible to hold otherwise but that Peter Tibbs fell down on his bid and that L. A. Moresi was merely substituted in his place as a bidder. It is shown that Moresi paid $80.00 for the property to Mr. Hacker, the attorney of the estate. This payment, it is shown, was made with the full consent, and in the presence of Peter Tibbs. The price so paid by Moresi was for the exact amount as shown by the administrator's deed. That Moresi was substituted as a bidder for Tibbs there can be no question under such overwhelming evidence. The record shows that on the 11th of November, 1915, after purchasing the property that Moresi wrote out a promise to re-sell the property to Columbus Tibbs, in six months from that date upon being re-imbursed for the price of sale and expenses he had incurred. He made the redemption in the name of Columbus, at the solicitation of Peter. In accepting this promise, granting this right of redemption, it is shown, that Peter was representing, and was fully authorized to represent his brother, Columbus, and his sister, Mary Jane. All three knew that this right of redemption existed in their favor, and had been accepted for their benefit. There can be no doubt from such facts as these, that these heirs acquiesced. In the acquisition by Moresi of the property. They made no effort, individually or otherwise, to effect the redemption within the time stipulated, and are effectually bound by the time limit fixed in this promise of Moresi to re-sell. Even, if there had been irregularities in the mortuary proceedings of the succession or in the manner the sale had been effected, the acceptance of this promise of sale by the heirs, and their inaction during the time therein stipulated for the redemption. present an effective bar to their recovery at this late date.

The proof shows that Moresi, after purchasing, removed the house and fences from the premises. This he had a right to do under his purchase as they were immovables, and formed part of the thing sold, and were so described in the administrator's deed. As to the rents and revenues, he was entitled thereto as fruits of the estate. The proof shows in reference to the lumber that some was hauled and dumped near the premises in question two or three years before Moresi acquired; there is no proof any lumber, outside of the house, was there when Moresi bought; and, no evidence, of any character to justify the conclusion that Moresi appropriated any lumber belonging to Peter Tibbs or any one else.

The demand of the plaintiffs was rejected below, and correctly.